

**PORTLAND MAIN OFFICE**
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1000
www.usdoj.gov/usao/or

**Andrew Ho**
Assistant U.S. Attorney
Andrew.ho@usdoj.gov
(503) 727-1000
*Reply to Portland Office*

**U.S. DEPARTMENT OF JUSTICE**
United States Attorney's Office
District of Oregon
Natalie K. Wight
United States Attorney

**EUGENE BRANCH**
405 E 8th Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771

**MEDFORD BRANCH**
310 West Sixth Street
Medford, Oregon 97501
(541) 776-3564

September 11, 2024

VIA EMAIL

3:24-cr-00344-AN

Steven B. Ungar
Ungar Law Office, LLC
Otis Elevator Building
230 NW 10th Avenue
Portland, OR 97209
steve@ungarlawoffice.com

      Re:    *United States v. Clancy Logistics, Inc.*
                 Pre-Charge Plea Offer

Dear Mr. Ungar:

1. **Parties/Scope**: This plea agreement is between this United States Attorney's Office (USAO) and defendant Clancy Logistics, Inc. ("Clancy Logistics Inc." or "defendant"), and thus does not bind any other federal, state, or local prosecuting, administrative, or regulatory authority. This agreement applies neither to any charges other than those specifically mentioned herein nor to any civil or administrative remedy that the Environmental Protection Agency or any other regulatory agency may seek.

2. **Charges**: Defendant agrees to plead guilty to Count One of the Information to be filed in this case, which is transmitted herewith and charges defendant with tampering with a monitoring device, in violation of the Clean Air Act, Title 42, United States Code, Section 7413(c)(2)(C), and Title 18, United States Code, Section 2, a Class E felony.

3. **Penalties**: The maximum sentence for an organization found guilty of this offense is a fine of $500,000 or twice the gross pecuniary gains or losses resulting from the offense, whichever is greater, and not more than 5 years of probation. *See* 18 U.S.C. §§ 3571 and 3561(c)(1); 42 U.S.C. § 7413(c)(2)(C). Additionally, defendant must also pay a mandatory fee assessment of $400 by the time of entry of its guilty plea or explain to the Court why this cannot be done. *See* 18 U.S.C. § 3013(a)(2)(B).

Steven B. Ungar
Re: Clancy Logistics Inc.
Plea Letter
Page 2

4.  **Dismissal/No Prosecution**: The USAO agrees not to bring additional charges against defendant in the District of Oregon arising out of this investigation, known to the USAO at the time of this agreement.

5.  **Elements and Factual Basis**: For defendant to be found guilty of Count One of the Information, the government must prove the following elements beyond a reasonable doubt:

    1.  Clancy Logistics Inc., a person;

    2.  Knowingly;

    3.  Falsified, tampered with, rendered inaccurate, or failed to install;

    4.  A monitoring device or method required under the Clean Air Act.

    Defendant has fully discussed the facts of this case and any potential defenses with defense counsel. Defendant has committed each of the elements of the crime to which defendant is pleading guilty and admits there is a factual basis for defendant's guilty plea. The following facts are true and undisputed:

    A.  Defendant Timothy Curtis Clancy owns and operates companies that operate diesel semi-trailer trucks, including Clancy Logistics Inc. and Clancy Transport Inc. Clancy Logistics Inc. is an Oregon-based company formed in 2020. Clancy Logistics Inc. operates a fleet of diesel semi-trailer trucks out of a facility in Fairview, Oregon. Clancy Transport Inc. is an Oregon-based company formed in 2012. Clancy Transport Inc. operates a fleet of diesel semi-trailer trucks and a truck repair shop out of the same premises.

    B.  Starting in at least 2019 and continuing through 2023, Timothy Curtis Clancy performed "deletes and tunes" of diesel trucks operated by his companies, including Clancy Logistics Inc. and Clancy Transport, Inc. This process involved the removal of emissions control systems which are designed to reduce pollutants being emitted from the vehicles. Under normal operating conditions, a vehicle's on-board diagnostic system (OBD) will detect any removal and/or malfunction of a vehicle's emissions control equipment. Upon detection of removal and/or malfunction, a diagnostic trouble code will be recorded and the malfunction indicator light, also known as the "check engine" light, will be illuminated on the dashboard of the vehicle. Under certain circumstances, if the malfunction is not remedied, the vehicle will be forced into "limp mode," where the maximum speed is limited to five miles per hour, incentivizing the vehicle owner to repair the issue. Thus, when Timothy Curtis Clancy removed or "deleted" the emissions control systems from vehicles, he also modified or "tuned" the vehicles' OBDs so that they could no longer detect the removal of the control equipment.

Steven B. Ungar
Re: Clancy Logistics Inc.
Plea Letter
Page 3

      C.      Because the OBD is a monitoring device that is required under the Clean Air Act, by modifying OBDs on vehicles, Clancy Logistics Inc. knowingly falsified, tampered with, and rendered inaccurate the vehicles' monitoring devices so that the modified vehicles could continue to function despite the removal or deletion of emissions control equipment. These activities were done in violation of the Clean Air Act, Title 42, United States Code, Section 7413(c)(2)(C).

      D.      Between approximately 2019 and 2023, Timothy Curtis Clancy deleted and tuned at least thirteen Class 8a semi-trailer diesel vehicles operated by his companies, including Clancy Logistics Inc., and Clancy Transport Inc., in violation of the Clean Air Act. At least three of these vehicles were operated by Clancy Logistics Inc.

      E.      Timothy Curtis Clancy, as the owner of Clancy Logistics Inc. and Clancy Transport Inc., oversaw the deleting and tuning of the vehicles. Clancy directed his employees, including several mechanics, in the removal of emissions control equipment. The vehicles OBDs were then tuned so that they could no longer detect the removal of the control equipment. The vehicles were tuned in one of the following ways by Clancy or at his direction: (1) Clancy used a laptop and the TeamViewer program to allow a programmer located abroad in Canada or elsewhere to tune the OBD remotely; (2) the vehicle's engine control module (ECM) was shipped to a second programmer in Canada to tune the OBD on the ECM, which was then shipped back and reinstalled in the vehicle; (3) the vehicle was brought to a local diesel repair shop in the State of Washington for a third programmer to tune the OBD; or (4) a fourth programmer visited Clancy's facility in Fairview to tune the OBD. In doing so, Clancy Logistics Inc. knowingly falsified, tampered with, and rendered inaccurate the vehicles' monitoring devices so that the modified vehicles could continue to function despite the removal or deletion of emissions control equipment in violation of the Clean Air Act, Title 42, United States Code, Section 7413(c)(2)(C).

      F.      According to defendant, the average cost savings each year from the deletion and tuning of the vehicles, including repair, maintenance, fuel and Diesel Exhaust Fluid savings, were at least $2,114 per vehicle. Each vehicle was operated for an average of at least two years after being tampered with, for a total cost savings of at least $4,229 per vehicle. Accordingly, the total cost savings was at least $50,755.

      G.      Diesel exhaust is known to contain a variety of air pollutants, such as particulate matter (PM), nitrogen oxides (NOx), carbon monoxide (CO) and non-methane hydrocarbons (NMHC), as well as substances identified as hazardous air pollutants under the Clean Air Act: Ethylbenzene, Formaldehyde, n-Hexane, Lead Components, Manganese Compounds, and Mercury Compounds. The act of removing or disabling a

Steven B. Ungar
Re: Clancy Logistics Inc.
Plea Letter
Page 4

    vehicle's emissions control system from a Class 3 heavy-duty diesel pickup truck can increase PM by a factor of up to 40 times, NOx by a factor of up to 310 times, CO by a factor of up to 120 times, and NMHC by a factor of up to 1,140 times. The total pollutant impact from tampered Class 8a vehicles is even greater. Although the percentage increase of excess tailpipe emissions is not as great in Class 8a vehicles, the total increase in these tailpipe pollutants (i.e., the total amount) from a deleted Class 8a vehicle is dramatically higher than from a Class 3 heavy-duty diesel pickup truck. For example, the distance-based NOx excess emissions for a Class 8a vehicle may be up to twice as much as a Class 3 vehicle and a Class 8a vehicle travels approximately four times the distance over its service life, on average. Thus, one deleted Class 8a vehicle can produce the same amount of excess NOx as eight deleted Class 3 vehicles.

6.  **Waiver of Discovery**: As a material term of this offer and agreement, defendant expressly accepts the USAO's offer to make available the evidence gathered in the investigation of this matter for on-site inspection and the USAO's production of limited discovery as of the date of this agreement in full satisfaction of the government's discovery obligations in this case. Defendant knowingly, intelligently, and voluntarily waives its rights to further production of evidence or information from the government, even though defendant may be entitled to such production pursuant to the Federal Rules of Criminal Procedure, the discovery orders of the Court, and any prior demands for discovery.

7.  **Acceptance of Responsibility**: Defendant must demonstrate to the Court that it fully admits and accepts responsibility under USSG § 3E1.1 for its unlawful conduct in this case. The USAO reserves the right to change this recommendation if defendant, between plea and sentencing, commits any criminal offense, obstructs or attempts to obstruct justice as explained in USSG § 3C1.1, or acts inconsistently with acceptance of responsibility as explained in USSG § 3E1.1.

8.  **Sentencing Recommendation**: Based on the negotiations between the parties and considering the relevant conduct and the factors set forth in 18 U.S.C. § 3553(a), the USAO and defendant will jointly recommend a sentence of three years of probation, during which defendant will follow the compliance program attached to this Plea Offer. Additionally, the parties will jointly recommend that the Court impose upon defendant a criminal fine of $101,510 to be paid jointly and severally with co-defendant Timothy Curtis Clancy.

9.  **Waiver of Appeal/Post-Conviction Relief**: Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds, except for a claim that the sentence imposed exceeds the statutory maximum. Should defendant seek an appeal, despite this waiver, the USAO may take any position on any issue on appeal. Defendant also waives the right to file any collateral attack, including a motion under 28 U.S.C. § 2255, challenging any aspect of the conviction or sentence on any grounds, except on grounds of

Steven B. Ungar
Re: Clancy Logistics Inc.
Plea Letter
Page 5

ineffective assistance of counsel, and except as provided in Fed. R. Crim. P. 33 and 18 U.S.C. § 3582(c)(2).

Defendant expressly agrees that this waiver shall remain effective in the event that the USAO alters its sentencing recommendation consistently with paragraph 7, *supra*, or because defendant breaches this agreement as described in paragraph 12, *infra*.

10.     **Court Not Bound**:  The Court is not bound by the recommendations of the parties or of the presentence report (PSR) writer. Because this agreement is made under Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, defendant may not withdraw any guilty plea or rescind this plea agreement if the Court does not follow the agreements or recommendations of the parties.

11.     **Full Disclosure/Reservation of Rights**:  The USAO will fully inform the PSR writer, the defendant, and the Court of the facts and law related to defendant's case. Except as set forth in this agreement, the parties reserve all other rights to make sentencing recommendations and to respond to motions and arguments by the opposition.

12.     **Breach of Plea Agreement**:  If defendant breaches the terms of this agreement or commits any new criminal offenses between signing this agreement and sentencing, the USAO is relieved of its obligations under this agreement, but defendant may not withdraw any guilty plea or challenge or rescind the waiver of appeal as provided in paragraph 9, *supra*.

If defendant believes that the government has breached the plea agreement, defendant must raise any such claim before the district court, either prior to or at sentencing. If defendant fails to raise a breach claim in district court, defendant has waived any such claim and is precluded from raising a breach claim for the first time on appeal.

13.     **Restitution**:  There is currently no identifiable restitution owed for the offense of conviction. The Court will have sole discretion ultimately to determine if the defendant has liability for any restitution.

14.     **Criminal Fine**: Defendant agrees fully to disclose all assets in which defendant has any interest or over which defendant exercises control, directly or indirectly, including those held by a spouse, nominee or third party. Defendant agrees to truthfully complete the Financial Disclosure Statement provided herein by the earlier of 14 days from defendant's signature on this plea agreement or the date of defendant's entry of a guilty plea, sign it under penalty of perjury and provide it to both the United States Attorney's Office and the United States Probation Office. Defendant agrees to provide updates with any material changes in circumstances, as described in 18 U.S.C. § 3664(k), within seven days of the event giving rise to the changed circumstances.

Steven B. Ungar
Re: Clancy Logistics Inc.
Plea Letter
Page 6

      Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on defendant. Defendant agrees to provide waivers, consents or releases requested by the U.S. Attorney's Office to access records to verify the financial information. Defendant also authorizes the U.S. Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office. The parties agree that defendant's failure to timely and accurately complete and sign the Financial Disclosure Statement, and any update thereto, may, in addition to any other penalty or remedy, constitute defendant's failure to accept responsibility under USSG § 3E1.1.

      Defendant understands and agrees that the total amount of any monetary judgment that the court orders defendant to pay—to include the $101,510 criminal fine outlined in paragraph 8, *supra*—will be due and payable immediately. Defendant further understands and agrees that pursuant to Title 18, United States Code, Section 3614, defendant may be resentenced to any sentence which might have originally been imposed if the court determines that defendant has knowingly and willfully refused to pay a fine as ordered or has failed to make sufficient bona fide efforts to pay a fine. Additionally, defendant understands and agrees that the government may enforce collection of any fine imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613 and 3664(m), notwithstanding any initial or subsequently modified payment schedule set by the court. Defendant understands that any monetary debt defendant owes related to this matter may be included in the Treasury Offset Program (TOP) to potentially offset defendant's federal retirement benefits, tax refunds, and other federal benefits.

      Pursuant to Title 18, United States Code, Section 3612(b)(F) defendant understands and agrees that until a fine is paid in full, defendant must notify the United States Attorney's Office of any change in the mailing address or residence address within 30 days of the change. Further, pursuant to Title 18, United States Code, Section 3664(k), defendant shall notify the court and the U.S. Attorney's Office immediately of any material change in defendant's economic circumstances that might affect defendant's ability to pay a fine in this matter, including, but not limited to, new or changed employment, increases in income, inheritances, monetary gifts or any other acquisition of assets or money.

15.    **Memorialization of Agreement**: No promises, agreements, or conditions other than those set forth in this agreement will be effective unless memorialized in writing and signed by all parties listed below or confirmed on the record before the Court. If defendant accepts this offer, please sign and attach the original of this letter to the Petition to Enter Plea.

/ / /

/ / /

/ / /

Steven B. Ungar
Re: Clancy Logistics Inc.
Plea Letter
Page 7

16. **Deadline**: This plea offer expires if not accepted by September 12, 2024, at noon.

        Sincerely,

        NATALIE K. WIGHT
        United States Attorney

        /s/ Andrew T. Ho
        ANDREW HO
        Assistant United States Attorney

Defendant Clancy Logistics Inc., through responsible agents and representatives, has carefully reviewed every part of this agreement with its attorney. Defendant understands and voluntarily agrees to the terms of this agreement. The corporation expressly waives its rights to appeal as outlined in this agreement. The corporation pleads guilty because, in fact, it is guilty.

9-11-24
Date

For Clancy Logistics Inc., Defendant

I represent the defendant as legal counsel. I have carefully reviewed every part of this agreement with defendant. To my knowledge, defendant's decisions to make this agreement and to plead guilty are informed and voluntary ones.

9-11-24
Date

Steven B. Ungar, Attorney for Defendant

ATTACHMENT A

**COMPLIANCE PROGRAM**

Clancy Logistics Inc. and Clancy Transport Inc. and their subsidiaries or affiliates (together "the Companies"), through their authorized representative, agree to the following monitoring and compliance measures during the term of Clancy Logistics Inc.'s Probation:

Definitions:

a. "Vehicle" means any (1) "motor vehicle" as defined under the Clean Air Act, 42 U.S.C. § 7550(2), which includes any self-propelled truck, semi-truck, car, van, camper, bus, or any other vehicle used to transport persons or property on streets or highways; and (2) "nonroad vehicle" as defined under the Clean Air Act, 42 U.S.C. § 7550(11), which includes any engine-powered vehicle such as construction, agricultural, or recreational equipment that is not designed for use on streets or highways.

b. "Vehicle tampering" means any steps taken to remove, render inoperable, override, modify, or alter any component of any vehicle's emissions control system, including but not limited to the selective catalytic reduction (SCR), exhaust gas recirculation (EGR), periodic trap oxidizer (PTOX), diesel particulate filter (DPF), diesel oxidation catalyst (DOC), or engine control module (ECM), or the onboard diagnostic (OBD) system.

c. "Delete device" includes, but is not limited to, an, "EGR delete," "DPF delete," "defeats," "defeat device," "delete kit," "upgrade kit," "conversion kit," "tuner," "tune," "programmer," "block plate," "straight pipe," or any other device designed to override, modify, alter, or allow the removal of any component of a vehicle's emissions control system.

d. "Tampered vehicle" means any vehicle that has been modified pursuant to "vehicle tampering."

Terms:

1. The Companies agree not to engage in, or conspire to, or cause others to engage in, vehicle tampering.

2. The Companies agree to immediately cease operating any tampered vehicles they own or operate (or that a subsidiary or affiliate owns or operates). The Companies will not sell or otherwise transfer any such vehicle intact or in a condition that allows the vehicle to be driven, unless it is restored. Within six months of Court approval of the Plea Agreement, the Companies agree to restore, scrap or recycle any tampered vehicle they own or operate. If any other

1

vehicles are later identified as being tampered vehicles that are owned or operated by the Companies or their subsidiaries or affiliates, the Companies agree to immediately cease operating and to restore, scrap or recycle those vehicles.

   a. For any tampered vehicles that are restored to stock, the Companies shall obtain and present a certification (attached) from a mechanic or dealership licensed by the vehicle's Original Equipment Manufacturer (OEM) that the vehicle has been restored to its certified configuration.

   b. For any tampered vehicles that are not restored to stock, the "long block" may be removed and sold for scrap, parts, or recycling, so long as the intake and exhaust manifolds are removed. The manifolds must be sold for scrap or otherwise disposed of. Any other emission control components that have been tampered with must be sold for scrap or otherwise disposed of. The remainder of the vehicle can be sold for scrap, parts, or recycling.

3. For any tampered vehicle, the Companies agree not to work on, repair, or service (1) the OBD system or (2) any hardware relating to the emissions control system, including the SCR, EGR, PTOX, DPF, and DOC, except for the purpose of restoring the emissions control system on the tampered vehicle to its certified configuration, that is, restoring it to stock.

4. The Companies agree to permit unrestricted entry to federal, state, and local officials to inspect premises, including hard copy and electronic documents, at any time and without advance notice, for violations of the Clean Air Act, 42 U.S.C. §§ 7413(c)(2) and 7522(c)(3).

5. The Companies agree to submit to the U.S. Attorney's Office an annual report detailing the Companies' compliance measures and including a certification signed by a responsible corporate officer confirming, if true, that the Companies have not knowingly engaged in any violations of the Clean Air Act, 42 U.S.C. §§ 7413(c)(2) and 7522(c)(3). The first certification shall be submitted one year from the date on which the Information is filed and shall be filed annually on that date until the Term of the Agreement is concluded.

Clancy Logistics Inc. and Clancy Transport Inc. through responsible agents and representatives, have carefully reviewed every part of this agreement with their attorney. The Companies understand and voluntarily agree to the terms of this agreement.

9-11-24
Date

_For Clancy Logistics Inc. and Clancy Transport Inc._

2

To be filled out and signed by the person inspecting the vehicle:

1. The inspection of the vehicle, VIN No. _____ was conducted by a mechanic or dealership authorized by the original vehicle or engine manufacturer.

2. The following are all the emission control components specified on the EPA label contained on the vehicle or engine. A photograph of the EPA label is attached.

    _____

    _____

    _____

    _____

    _____

    _____

    _____

    _____

    _____

3. Each emission control component has been inspected and is in working order.

4. Based on my inspection, I confirm that the above-listed emission control components of the subject vehicle/engine meet all of the design specifications in its original EPA-certified configuration and has passed an OBD test.

_____     _____
Name                                 Date

_____
Company